**FILED**
**Nov 20, 2018**
**01:39 PM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MEMPHIS

| | | |
|---|---|---|
| **BESSIE FOSTER,** | ) | **Docket No. 2018-08-0237** |
| Employee, | ) | |
| v. | ) | |
| **ANDY FRAIN SERVICES, INC.,** | ) | **State File No. 1227-2017** |
| Employer, | ) | |
| | ) | |
| **And** | ) | **Judge Allen Phillips** |
| **CONTINENTAL NATIONAL** | ) | |
| **INDEMNITY CO.,** | ) | |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

Ms. Foster requested medical benefits for an injury occurring on December 30, 2016. Specifically, she requested that Andy Frain Services, Inc. (Frain) pay for surgical revision of a knee replacement. The Court conducted an Expedited Hearing on November 7, 2018, and holds Ms. Foster is entitled to the requested surgery.

### History of Claim

On December 30, 2016, Ms. Foster was working for Frain as a security guard when a golf cart ran over her right foot and knocked her to the ground. On that day, she went to Methodist Hospital and complained of right foot, right knee, right shoulder and neck pain. According to the radiologist, x-rays revealed implantation of a knee replacement but the findings were otherwise normal. On January 12, 2017, Ms. Foster received authorized care at Baptist Family Physicians where she complained of, among other things, "acute" right knee pain. At a follow-up visit, a provider recommended orthopedic evaluation.

Frain authorized Ms. Foster to see Dr. Apurva Dalal, an orthopedic surgeon. On

1

March 15, Ms. Foster told Dr. Dalal of pain in her foot, neck, and shoulder.[1] X-rays of those body parts proved negative. However, Dr. Dalal's primary concern was a possible deep vein thrombosis (DVT) given Ms. Foster's complaints and his examination. Thus, he recommended an ultrasound of the right leg.

On March 22, Dr. Dalal noted the ultrasound was negative for DVT. But he also recorded that Ms. Foster said her right ankle, hip, and *knee* were twisted when the cart ran over her foot. An x-ray of the foot on that date revealed a fracture of Ms. Foster's right third toe. On March 28, Dr. Dalal responded to Frain's inquiry about the cause of Ms. Foster's complaints in light of a report that Ms. Foster had fallen getting out of bed. Dr. Dalal attributed all of Ms. Foster's problems to the December 30 incident despite the fall by explaining that she suffered weakness in her foot since the work event and that led to her fall at home.

Ms. Foster returned to Dr. Dalal on May 31 and said she had seen another orthopedist that provided her with an ankle brace. Further, Ms. Foster complained that her right knee and hip had hurt since the incident but "nobody has paid attention" to those body parts. On that date, Dr. Dalal found diminished motion of Ms. Foster's right knee due to swelling and pain and said he was "convinced she had an injury to the right knee" due to the incident. He requested Frain approve treatment.

By June 7, Frain had approved treatment for the knee and Dr. Dalal found severe tenderness in the lateral compartment. An x-ray revealed a lateral patella subluxation, or tilt, which he said indicated a ligament tear. He recommended a CT scan which did not show "hardware dysfunction." However, his clinical exam led him to believe a ligament tear was causing knee instability. Specifically, his examination demonstrated Ms. Foster's knee "came out a lot more than it should" when he pulled it toward the front (anterior instability) and that her knee "gaped open a lot more than it should" when he torqued it inward (medial instability). Dr. Dalal's continued findings of instability on subsequent examinations prompted him to recommend the revision of Ms. Foster's knee replacement. He stated to a reasonable degree of medical certainty that the need for surgery arose primarily from the December 30 incident.

Frain requested a medical record review by Dr. Riley Jones, an orthopedic surgeon. In a January 8, 2018 report, Dr. Jones recounted Ms. Foster's treatment and concluded her "injury was a contusion of the right foot and a sprain to the right lower leg which was resolving when she injured herself at home. . . ." Namely, he attributed the fractured toe and sprained ankle to her fall getting out of bed and those injuries had "nothing to do with her original injury." Further, he said the records contained only "intermittent" complaints of knee pain and the CT scan revealed no hardware

---

[1] Dr. Dalal clarified in his deposition that his initial note mistakenly listed the *left* extremity but that Ms. Foster had complained of the right.

dysfunction. Dr. Jones did not relate Ms. Foster's complaints to the December 30 incident. Dr. Jones wrote this report before he examined Ms. Foster.

On March 6, Dr. Jones performed a physical examination of Ms. Foster. She complained of pain in both knees but had no difficulty moving about the examination room. Dr. Jones said he could not "reproduce the laxity that Dr. Dalal had found" and there was no "opening" of the joint in either flexion or extension "under x-ray." He reviewed the December 30 x-rays taken at Methodist Hospital and said they showed "chronic" changes in the "patella button" placed during the knee replacement surgery. He believed placement of the patella button at an angle led to "grooving" of the patella bone, which in turn led to the patella shift noted by Dr. Dalal. He attributed no anatomic changes to the December 30 incident but requested a bone scan for completeness. After the scan revealed no abnormalities, he maintained his original opinion that the December 30 incident did not cause Ms. Foster's complaints.

Dr. Dalal "disagreed totally" with Dr. Jones's opinions. Specifically, he pointed to the "gross instability" of Ms. Foster's knee that he found on several visits, in addition to swelling and the tilted patella. Further, Ms. Foster told him "repeatedly" that her knee "bothers her" and that it "gives out." Dr. Dalal said "for some unknown reason" Dr. Jones did not "detect instability in the knee joint" and said surgery was unnecessary. He also noted Dr. Jones provided his initial causation opinion in a report generated before examining Ms. Foster. He testified Ms. Foster told him that she functioned without restriction at work and at home before the incident.

Based on this evidence, Ms. Foster claimed entitlement to the recommended surgery. She did not testify but instead argued from the medical records. She noted Dr. Dalal's testimony that her need for surgery arose primarily out of the December 30 incident and that he focused on the clinical findings of ligament instability as opposed to Dr. Jones's focus on the absence of hardware dysfunction. Also, she pointed to Frain's misplaced focus on her later fall rather than the direct cause, the December 30 incident. Finally, she argued Dr. Dalal's opinion is presumed correct because he is the authorized physician and that Frain did not rebut it by a preponderance of the evidence.

Frain countered that Dr. Jones had the benefit of reviewing all the medical records, including x-rays from Methodist Hospital. It argued Dr. Dalal did not see the hospital x-rays and was mistaken when he attributed any prosthetic dysfunction to the work incident. Frain asserted Dr. Dalal focused primarily on Ms. Foster's ankle and foot and when he found nothing to treat, then found a knee problem. Frain contended the delayed observation of a knee issue coupled with Dr. Jones's explanation of no objective findings attributable to the incident rebutted the presumption of correctness attached to Dr. Dalal's opinion.

3

**Findings of Fact and Conclusions of Law**

At this interlocutory proceeding, Ms. Foster must show she would likely prevail at a hearing on the merits regarding her surgery request. Tenn. Code Ann. § 50-6-239(d)(1) (2018). The Court holds she would.

In so holding, the Court must determine whether a particular medical treatment is 'made reasonably necessary' based on the proof presented at the time of proposed treatment. *Limberakis v. Pro-Tech Security*, 2017 TN Wrk. Comp. App. Bd. LEXIS 53 at *5-6 (Sep. 12, 2017). Because the proof consists of two medical opinions, the Court must decide which one to accept. *Sanker v. Nacarato Trucks, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *11-12 (July 6, 2016). In making that determination, the Court may consider the qualifications of the experts, the circumstances of their evaluation, the information available to them, and the evaluation of the importance of that information to other experts. It also might accept the expert opinion containing the more probable explanation. *Ledford v. Mid-Georgia Courier*, 2018 TN Wrk. Comp. App. Bd. LEXIS 28, at *7 (June 4, 2018). Dr. Dalal, as the authorized treating physician, is presumed correct subject to rebuttal by a preponderance of the evidence. *See* Tenn. Code Ann. § 50-6-102(14)(E).

Regarding qualifications, the Court notes both Dr. Dalal and Dr. Jones are experienced orthopedic surgeons. They stand on equal footing.

Regarding the circumstances of their evaluations, the Court accredits Dr. Dalal. As the treating physician he had more extensive contact with Ms. Foster, seeing her multiple times. Conversely, Dr. Jones saw Ms. Foster on one occasion, fourteen months after her injury, for evaluation only. Tennessee law considers it reasonable to conclude that the physician having greater contact with an injured employee has an advantage in providing a more in-depth opinion, if not a more accurate one. *Bass v. Home Depot U.S.A., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 36 at *14 (May 26, 2017).

Regarding the information available to the experts, the Court again finds Dr. Dalal in a superior position. He saw Ms. Foster soon after her injury and routinely examined her over the course of many months. He chronicled Ms. Foster's pain complaints and explained how and why his focus moved towards her knee. He testified unequivocally that he detected joint laxity in the knee and his personal review of x-rays taken in his office revealed a tilted patella, two findings indicating that Ms. Foster suffered a ligament injury.

In rebuttal, Frain contended Dr. Jones had the benefit of all records for review and that placed him in a superior positon. The Court disagrees. Dr. Jones's information largely came from Dr. Dalal, the physician whom Frain claims he rebutted. Contrary to Frain's argument, the Court finds Dr. Dalal had superior information because of his

4

extensive contact with Ms. Foster and he articulated his clinical findings more persuasively than Dr. Jones. Notably, Dr. Jones stated Ms. Foster's complaints were not related to the incident *before* he actually examined her.

Regarding the importance of information to other experts, the Court finds both physicians reviewed objective studies and arrived at different conclusions regarding their importance. Dr. Jones maintains any anatomic findings on the studies came from gradual degeneration unrelated to the incident while Dr. Dalal viewed the studies as suggesting ligament laxity. Under these circumstances, the Court finds the proof equal and subject to interpretation. The Court recognizes that it is not well-suited to make independent medical determinations without expert medical proof and relies only on the evidence presented. *Thompson v. Comcast Corp.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 1 at *31 (Jan. 30, 2018).

When weighing that evidence, the Court holds Dr. Dalal offered the more probable explanation for Ms. Foster's need for surgery. Before the incident, Ms. Foster worked regularly and functioned without restriction. She no longer does so. In *Wallis v. Baptist Mem. Hosp.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 29 (June 20, 2019), the employee worked without restriction until injuring his back. One physician attributed the injury to the work and another did not. The Appeals Board stated that the physician who provided causation gave the more accurate opinion "when considered in conjunction with Employee's testimony." *Id.* at *20. Here, the Court finds Dr. Dalal provided the more probable explanation when considering his clinical findings in conjunction with Ms. Foster's history. The Court does not read medical evidence "in a vacuum" but considers it in conjunction with Ms. Foster's history of how the injury occurred and her subsequent condition. *See Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991). When so doing, the Court holds Dr. Dalal was correct and that Frain did not rebut his opinion by a preponderance of the evidence.

Therefore, Frain must provide Ms. Foster all medical benefits made reasonably necessary by the injury, including the surgery recommended by Dr. Dalal. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A).

**IT IS, THEREFORE, ORDERED** as follows:

1. Frain shall continue to provide Ms. Foster reasonable and necessary medical treatment under Tennessee Code Annotated section 50-6-204(a)(1)(A), including the surgery recommended by Dr. Dalal. He shall remain the authorized physician.

2. This matter is set for a Status Hearing on **Tuesday, January 29, 2019**, at **10:00 a.m. Central time**. The parties must call 731-422-5263 or toll-free 855-543-5038 to participate in the Hearing.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED this the 20th day of November 2018.**

_____
**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

## APPENDIX

<u>Exhibits:</u>

1. Deposition of Dr. Apurva Dalal
2. Deposition of Dr. Riley Jones
3. Collective Medical Records

<u>Technical record:</u>

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Scheduling Hearing
4. Order Setting Expedited Hearing
5. Employee's Witness List
6. Employer's Pre-Hearing Brief

6

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 20th day of November, 2018.

| Name | Email | Service sent to: |
|---|---|---|
| Christopher L. Taylor, Attorney for Employee | X | ctaylor@taylortoon.com |
| Sara E. Barnett and Heather J. Gavrock, Attorneys for Employer | X | saraebarnett@spraginslaw.com hjg@spraginslaw.com |

Penny Shrum, Clerk of Court
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**